[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13916

_____

Agency No. A88-834-001

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2009
THOMAS K. KAHN
CLERK

ILANGEERAN PARAMANATHAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 14, 2009)

Before EDMONDSON, BLACK and SILER,[*] Circuit Judges.

_____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

PER CURIAM:

Petitioner Ilangeeran Paramanathan ("Petitioner") petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") decision denying Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because substantial evidence supports the BIA's denial of Petitioner's asylum and withholding of removal based on a well-founded fear of future persecution -- including individual and pattern-or-practice persecution -- we deny those aspects of the petition. We dismiss Petitioner's CAT claim for lack of jurisdiction.

I. BACKGROUND

Petitioner is a native and citizen of Sri Lanka. On 3 October 2007, Petitioner arrived at a Florida airport and sought entry into the United States. He told immigration officials that he feared returning home to Sri Lanka. Later, the Department of Homeland Security charged Petitioner with inadmissability as an immigrant not in possession of a valid entry document. 8 U.S.C. § 1182(a)(7)(A)(i)(I). In January 2008, Petitioner submitted an application for

2

asylum, withholding of removal, and protection under the CAT. The IJ denied all three applications. Petitioner then appealed to the BIA, which affirmed the IJ's decision. He now petitions this Court for review of the BIA's decision.

The facts pertinent to Petitioner's appeal are these facts: Petitioner belongs to Sri Lanka's Tamil ethnic minority. During a credible-fear interview, Petitioner told an immigration officer that the Sri Lankan army accused all young Tamil men -- and especially male university students -- of being members of the Liberation Tigers of Tamil Eelam ("Tigers"). The Tigers are a rebel group that engages in armed conflict with the Sri Lankan government.

Petitioner claimed[1] that he was, on several occasions -- because he was a student and a Tamil -- accused of being a Tiger. For example, Petitioner says that Sri Lankan soldiers often harassed him while he attended university in Jaffna, Sri Lanka. Soldiers, Petitioner claims, also shot a fellow student during a peaceful campus protest and beat protesters on campus.

In addition, Petitioner claims that the Sri Lankan army took him into custody at an army camp 10-12 times. During those detentions, which each lasted around 30 minutes, the army forced Petitioner to kneel with his hands tied while a solider

---

[1] According to the IJ, "the Court does not have any specific issues relating to the respondent's credibility [but it] does have an issue with plausibility. . . . the plausibility of the respondent's account[] is at question, and, possibly embellished."

3

pointed a gun at Petitioner and shouted at him in a language Petitioner did not understand. Petitioner contends that during one of these sessions, he observed fellow Tamils being tortured. He testified that he also saw Tamils blindfolded, handcuffed, and transported away from the camp in a van; some of their bodies were later found by the side of the road. Petitioner also testified that one soldier warned him that "If I take you into custody again, I'll kill you."

Petitioner's brother had been killed some years earlier when a shell fired by the Sri Lankan army hit Petitioner's family home. Because his parents feared for Petitioner's safety, they sent him to live in a lodge in Colombo, the capital of Sri Lanka. Petitioner stayed there for four or five months. During that time, the army allegedly raided the lodge where Petitioner lived and took Tamils into custody. But because Petitioner had just been released from the hospital for an ulcer treatment, the army did not take him. They warned, however, that they would take Petitioner if he stayed in Colombo longer. Petitioner fled the country in October 2007. He says that he intended to seek asylum in Canada, where he has relatives; but he first sought entry into the United States.

After entering the United States and being ordered to appear in immigration court, Petitioner told the IJ that the Sri Lankan army would kill Petitioner if he

returned to Sri Lanka. Petitioner further testified that he would be targeted as a Tamil who was a former university student.

The IJ found that Petitioner "failed to establish past persecution or any well-founded fear of persecution based on any protected ground." The IJ further found no real evidence was presented that Petitioner had actually been harmed in Sri Lanka, despite his detentions. Petitioner was always released after each detention. That Petitioner's family still lived unharmed in Sri Lanka also undercut Petitioner's fear of persecution. Moreover, the IJ found that Petitioner's account was "possibly embellished." The IJ denied all three applications: asylum, withholding of removal, and protection under the CAT.

Petitioner timely appealed to the BIA, arguing, among other things, that he had a well-founded fear of persecution based on a pattern or practice of the Sri Lankan army persecuting young Tamil males. Adopting the IJ's decision "in whole," the BIA affirmed the denial of asylum, withholding of removal, and CAT protection. Petitioner now seeks review of the BIA's decision.

## II. STANDARD OF REVIEW

The BIA reviews the IJ's factual determinations for clear error. 8 C.F.R. § 1003.1(d)(3). We review only the BIA, "except to the extent the BIA expressly adopts the IJ's decision." Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007). Here, because the BIA adopted and affirmed the IJ's decision, we review both. We must uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 112 S. Ct. 812, 815 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). To reverse an administrative factual determination under this test, we must conclude that "the evidence not only supports [a contrary] conclusion, but compels it." Elias-Zacarias, 112 S. Ct. at 815 n.1. "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

6

## III. DISCUSSION


### A.    Asylum Based on Well-Founded Fear of Future Persecution


To establish asylum eligibility, an applicant must show "with specific and credible evidence . . . (1) past persecution on account of a statutorily listed factor, or (2) a 'well-founded fear' that the statutorily listed factor will cause future persecution." Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006) (internal citation omitted); see also 8 C.F.R. § 208.13(a),(b). The BIA determined that Petitioner failed to establish harm severe enough to rise to the level of past persecution. See Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1232 (11th Cir. 2007) (reaffirming that "mere harassment does not amount to persecution"). It also determined that Petitioner failed to demonstrate an objectively reasonable, individualized fear of future persecution.

Because Petitioner essentially concedes that his past mistreatment did not rise to the level of persecution, he argues that the BIA clearly erred by finding that Petitioner had no individualized, well-founded fear of future persecution. To substantiate his future fear, Petitioner notes that he was threatened by army soldiers in Jaffa and Colombo; that the army would treat Petitioner worse than his brothers -- who still live in Sri Lanka unharmed -- because Petitioner is an educated Tamil;

7

and that the cumulative effect of 10-12 detentions points to well-founded fear. See

Poradisova v. Gonzales, 420 F.3d 70, 79–81 (2d Cir. 2005) (reversing denial of

asylum because, among other reasons, BIA failed to view events cumulatively).

Petitioner specifically contends that the BIA erred by finding that the

reasonableness of Petitioner's fear was undercut, considering that Petitioner's

family remains in Sri Lanka relatively unharmed. See Matter of A-E-M, 21 I&N

Dec. 1157, 1160 (BIA 1998); see also De Santamaria v. U.S. Att'y Gen., 525 F.3d

999, 1011–12 (11th Cir. 2008) (examining whether asylum applicant's family still

lives in home country "without incident" as part of objective evaluation into

applicant's fear of future persecution); Ruiz v. U.S. Att'y Gen., 440 F.3d 1247,

1259 (11th Cir. 2006) (that applicant's family continued to live in home country

without incident undercut fear of future persecution). To the contrary, Petitioner

argues that no evidence exists that his parents or siblings are safe in Sri Lanka; he

never offered such evidence to the IJ.[2]

But Petitioner bears the burden of proving a well-founded fear of future

persecution: a burden he does not carry here. See Zheng, 451 F.3d at 1291.

Because Petitioner offers no evidence that compels a conclusion different than that

---

[2] Petitioner admits, however, that when questioned about his brothers, Petitioner testified that they were only subjected to questioning by the army "about twice."

of the BIA -- that his family's apparent safety in Sri Lanka undercut Petitioner's reasonable fear of future persecution -- we must uphold the BIA's finding.

Furthermore, even viewed cumulatively -- that is, looking at the effect of ten or even twelve brief detentions -- and accounting for the IJ's determination of Petitioner's credibility, Petitioner's claims do not necessarily rise to a well-founded fear of future persecution. See Zheng, 451 F.3d at 1289–92 (even five-day detention did not give rise to well-founded fear of future persecution); Silva, 448 F.3d at 1237 (mere threats do not give rise to well-founded fear of future persecution). Petitioner neither demonstrates "objectively reasonable fear of persecution" based on a protected characteristic, nor does he offer substantial evidence that compels reversal of the BIA's findings. He is therefore ineligible for asylum and withholding of removal on this ground, see Zheng, 451 F.3d at 1292, and we DENY this part of the petition.

B.     Asylum Based on Pattern or Practice

An applicant may also show a well-founded fear of future persecution by proving a pattern or practice of a country persecuting a "group of persons similarly situated to the applicant" based on a protected characteristic. To obtain relief for

pattern-or-practice persecution, the applicant must also demonstrate membership in the protected group. 8 C.F.R. § 208.13(b)(2)(iii)(A),(B).

Petitioner argues that the BIA failed to adjudicate his pattern-or-practice claim, which he raised before the BIA by citing the relevant statute, see 8 C.F.R. § 208.13(b)(2)(iii), and by proffering to the IJ and the BIA specific evidence of categorical discrimination against Tamils and young male Tamils in Sri Lanka. Because the BIA order failed explicitly to mention pattern or practice, Petitioner argues, this aspect of his petition should be remanded for a BIA decision.

Fear of future persecution is one basis for asylum. Two lines of proof are possible to establish this basis. Petitioner has the burden of proving either (1) that he would be singled out for future persecution, see Ruiz, 440 F.3d at 1257, or that (2) a group of persons similarly situated to him suffered a pattern or practice of persecution. See Silva, 448 F.3d at 1261. The Government contends that when the BIA in this proceeding wrote Petitioner failed to carry his burden of proof to establish "a well-founded fear of future persecution . . . on account of one of the statutorily protected grounds, including race, religion, and political opinion . . . or any other protected ground," the BIA decided that Petitioner's future persecution claim showed no merit as an individual or as a member of a group, such as Tamils or young Tamil males. The Government says the appeal is ready for our review.

10

Although fairly detailed BIA orders help us, the BIA is not obligated to discuss in its order every strand of evidence that is presented by a petitioner seeking asylum on the basis of future persecution. See Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000) ("[E]ach piece of evidence need not be discussed in a decision."). We accept that, where the BIA recognizes the Petitioner's membership in a group that is a group for the purposes of the asylum statutes and is the group that Petitioner contends is the subject of pattern-or-practice persecution, a BIA declaration that Petitioner has failed to show well-founded fear of persecution decides and rejects the theories of both individual and group persecution, unless the BIA order clearly says otherwise. The BIA can effectively recognize Petitioner's group membership by either words in the BIA's own order or adopting an IJ's decision that expressly acknowledges membership in the pertinent group. In this case, the BIA through its own order and through the adopted words of the IJ, recognized that Petitioner was a Tamil and a young Tamil male. We conclude that Petitioner's pattern-or-practice contention was decided by the BIA and can now be reviewed.

We will uphold the BIA's factual determination that Petitioner failed to prove a well-founded fear of future persecution based on pattern or practice unless the evidence compels a contrary conclusion. Elias-Zacarias, 112 S. Ct. at 816 n.1.

11

As the Government points out, however, a pattern-or-practice contention will prevail only if it is so extreme that it shows "systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group." Ahmed v. Gonzales, 467 F.3d 669, 675 (7th Cir. 2006) (internal quotations omitted).[3]

Petitioner failed to meet the burden of proving a well-founded fear of individualized, future persecution; he also failed to prove the more "extreme" persecution required for a pattern-or-practice claim. He offers no binding caselaw in which Tamils or young Tamil males have obtained asylum or withholding of removal based on a pattern-or-practice contention, nor does he offer substantial evidence that compels reversal of the BIA's findings. Accordingly, we DENY this part of the petition.

C.      Convention Against Torture Claim

Petitioner claims that the BIA insufficiently stated the basis of its denial of Petitioner's CAT claim; he requests a remand on the issue. See Kamalthas v. INS, 251 F.3d 1279, 1283 (9th Cir. 2001) (CAT is not "merely a subset" of asylum and withholding claims).

---

[3] Once a court grants asylum based on a pattern-or-practice claim, "every member of the group is eligible for asylum." Id.

12

We need not reach this claim, however, because although Petitioner asked for asylum and withholding of removal, he did not raise a CAT claim before the BIA. Therefore, even though the BIA summarily dismissed Petitioner's CAT claim, we do not have jurisdiction to review it. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (we lack jurisdiction over claims not raised before BIA, even if BIA reviews issue sua sponte). Therefore, we DISMISS this part of the petition.

Petition DENIED in part and DISMISSED in part.